UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21469-Civ-GOLD
MAGISTRATE JUDGE P.A. WHITE

DARCUIS DONARD PRICE,                :

    Petitioner,                      :

v.                                   :            REPORT OF
                                                  MAGISTRATE JUDGE
JAMES R. McDONOUGH,                  :

    Respondent.                      :
_____

    Darcuis Donard Price, a state prisoner currently confined in Mayo Correctional Institution at Mayo, Florida, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 in this Court, attacking the constitutionality of his conviction entered in Case No. 98-00334 in the Circuit Court of the Eleventh Judicial Circuit of Florida at Miami-Dade County.

    This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

    For its consideration of the petition with supporting memorandum of law, the Court has the petitioner's response to an order regarding the limitations period with supporting exhibits, and the respondent's response to an order to show cause with multiple exhibits.

    Price raises the following claims for relief:

    1.    The trial court erred during the voir dire proceedings when it overruled his objections to the prosecutor's use of her peremptory challenges to eliminate African-American jurors.

2. He received ineffective assistance of trial counsel when his attorney failed to conduct a proper investigation into the facts of the case and call Giovanni Herrera as a defense witness.

3. He received ineffective assistance of trial counsel when his attorney failed to apprise him of the state's evidence, resulting in his inability to make an intelligent and voluntary decision whether to proceed to trial or instead accept the state's plea offer.

4. He received ineffective assistance of trial counsel when his attorney failed to request a special jury instruction on his duty to retreat from harm.

5. He received ineffective assistance of trial counsel when his attorney failed to impeach state witness Roman.

6. He received ineffective assistance of trial counsel when his attorney failed to file an adequate motion for new trial.

The pertinent procedural history of this case is as follows. After receiving a new jury trial, Price was again convicted of carjacking with a firearm and he was sentenced as a prison releasee reoffender to a term of life imprisonment.[1] (DE# 15; App. A at 113-27). Price prosecuted a direct appeal from his conviction, raising the identical claim presented here as ground one. (DE# 15; App. B). The conviction and sentence were per curiam affirmed in a decision without written opinion. Price v. State, 883 So.2d 810 (Fla. 3 DCA 2004)(table). Price returned to the trial court, and filed a motion for postconviction relief pursuant to Fla.R.Crim.P. 3.850, raising the same five ineffective assistance of trial counsel claims as raised in this federal proceeding. (DE# 15; App. F). The motion was summarily denied (DE# 15; App. G) as was the motion for rehearing. (DE# 15; App. H, I). The denial of relief was per curiam affirmed without written opinion by the Florida Third District Court of

---

[1] Petitioner was originally convicted of carjacking, and he appealed his conviction to the Third District Court of Appeal where the court reversed and remanded the case for a new trial. See Price v. State, 816 So. 2d 738 (Fla. 3 DCA 2002).

Appeal, see Price v. State, 947 So.2d 1178 (Fla. 3 DCA 2006), and the Florida Supreme Court dismissed Price's petition for discretionary review. See Price v. State, 952 So.2d 1191 (Fla. 2007).

Soon after all state court proceedings had concluded, Price came to this Court, filing the instant federal habeas corpus petition pursuant to 28 U.S.C. §2254. In his response to the order to show cause, the respondent rightfully does not challenge the timeliness of this petition. See 28 U.S.C. §2244(d). The respondent further concedes that all claims of this federal petition have been properly exhausted before the state courts. See 28 U.S.C. §2254(b)(1) and (b)(1)(A)(A state prisoner's habeas corpus petition "shall not be granted unless it appears that----the applicant has exhausted the remedies available in the courts of the State....").[2] The respondent has addressed on the merits all claims presented in this federal petition.

Turning to a consideration of Price's federally cognizable claims, Section 104(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §2254(d), provides that a prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state

---

[2] An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement." O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Richardson v. Procunier, 762 F.2d 429, 430 (5 Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5 Cir. 1982), cert. denied, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard v. Connor, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. Leonard v. Wainwright, 601 F.2d 807, 808 (5 Cir. 1979).

court, unless the decision of the state court was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. §2254(d)(1), (2). <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). <u>See also</u>, <u>Fugate v. Head</u>, 261 F.3d 1206, 1215-16 (11 Cir. 2001).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of §2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005); <u>Williams v. Taylor</u>, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. <u>Hall v. Head</u>, 310 F.3d 683, 690 (11 Cir. 2002) <u>citing</u>, <u>Williams</u>, 529 U.S. at 412. However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. <u>See</u> <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002); <u>Parker v. Secy of Dept. of Corrections</u>, 331 F.3d 764, 775-76 (11 Cir. 2003). So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed.[3] <u>Id</u>. Further, a federal court must

---

[3] The Eleventh Circuit has continued to stress the importance of the standard established in Section 2254(d), stating that the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the

presume the correctness of the state court's factual findings. <u>See</u>
28 U.S.C. §2254(e)(1); <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11 Cir.
2001), <u>cert</u>. <u>denied</u>, 537 U.S. 870 (2002).

In brief, the facts of this case, as aptly summarized by the
Florida appellate court in its initial opinion on direct appeal are
as follow:[4]

> In this case, [Price] ran up to the victim as she was getting
> into her car. He demanded and received the keys to the car at
> gunpoint, entered the car, locked the doors, and tried to
> start it. Because of what appears to have been a defect in the
> keys, he was unable to do so. Shortly thereafter he was
> grabbed by witnesses, disarmed, and held until the police
> arrived.

<u>Price v. State</u>, 816 So.2d 738, 741 (Fla. 3 DCA 2002).

At trial, the state called the victim Jennifer Paik as a
witness who testified that she arrived to work at a day care center
driving a 1997 Nissan pick-up truck. (Trial Transcript at 187)(DE#
17). She testified that as she opened the door of the truck and was
still sitting in the car gathering her belongings while the key was
in the ignition, Price blocked her view with his left arm and with
his right arm he held a gun towards her. <u>Id</u>. at 190. Price demanded
the car keys and Paik complied by pulling the keys out of the
ignition and handing them to Price. <u>Id</u>. She testified that she was
able to dodge underneath the perpetrator's left arm and run off.

---

merits in state court." <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11 Cir. 2002).
Specifically, the AEDPA "modified a federal habeas court's role in reviewing
state prisoner applications in order to prevent federal 'retrials' and to ensure
that state court convictions are given effect to the extent possible under law."
<u>Crawford</u>, <u>supra</u> at 1295, <u>quoting</u> <u>Bell v. Cone</u>, 535 U.S. 685 (2002). <u>See also</u>
<u>Hawkins v. Alabama</u>, 318 F.3d 1302 (11 Cir.2003)(discussing AEDPA's limits on
federal court authority).

[4]For a more detailed recitation of the facts of this case with citations
to the trial transcript, see Price's brief filed in the direct appeal proceeding.
(Appellant's Initial Brief at 7-10)(DE# 15; App. B). <u>See also</u> Trial Transcript.
(DE# 16, 17)

Id. Paik ran into her office and telephoned the police. Id. at 191-92. Paik testified that as she ran off, she observed some people running towards the truck while yelling and the people attempted to prevent Price from stealing the truck. Id. at 192-93. Paik identified Price at trial as the perpetrator. Id. at 194.

The state also called Dionisio Roman as a witness who testified that as he was driving home, he saw Price with a gun. Id. at 221-22. Roman testified that he thought Price had just robbed someone so he and another individual followed Price on foot, who was running, until Price arrived at a pick-up truck at the parking lot of a daycare center. Id. at 222-24. Roman testified that he saw Price inside the truck, saw him take the key from the woman who was parking the truck, and saw Price holding a gun. Id. at 224-26. Roman testified that Price was unable to drive off in the truck in that he could not find the right key. Id. at 226. Roman testified that when he reached Price, he and others struggled with Price. Roman testified that he was able to take the gun from Price, and Price was restrained until the police arrived. Id. at 227-29. Roman identified Price at trial as the perpetrator. Id. at 229-30. Price testified in his own behalf that he was being chased first by one man and then by a second man, and he ran towards a day care center. Id. at 269-70. As he ran, he saw a woman in front of him whom he almost ran into. Id. at 270.  The woman was outside the truck and when she saw him, she ducked and ran. Id. Price testified that he continued to run and that he did not know why she also ran. Id. Price testified that he did not possess a firearm, that he did not point a gun at the woman or try to take her car, and that he simply continued to run until he got to the underpass by a bridge where the men jumped on him and began fighting. Id. at 270-73.

Price claims in ground one that the trial court erred during

the <u>voir</u> <u>dire</u> proceedings when it overruled his objections to the prosecutor's use of her peremptory challenges to eliminate prospective jurors Gilbert and Somers, African-Americans, since the state had failed to offer sufficient race-neural reasons for the strikes. Price is not entitled to relief on this claim.

It is well settled that a defendant is denied equal protection of the law when he is tried before a jury from which members of his or her race have been excluded by the state's purposeful conduct. <u>Powers v. Ohio</u>, 499 U.S. 400, 404 (1991). <u>See also</u> <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986); <u>Miller-El v. Dretke</u>, 545 U.S. 231 (2005). A *Batson* challenge is made in three steps. "First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question." <u>Rice v. Collins</u>, 546 U.S. 333, 126 S.Ct. 969, 973, 163 L.Ed.2d 824 (2006). "[S]o long as the reason is not inherently discriminatory, it suffices." <u>Id</u>. at 338. The state's proffered explanation at this stage need not be "persuasive or even plausible ... the issue is the facial validity of the prosecutor's explanation." <u>Purkett v. Elem</u>, 514 U.S. 765, 768 (1995). Since the issue in this step of <u>Batson</u> is the facial validity of the reason given by the prosecutor, the reason will be deemed race neutral unless a discriminatory intent inheres in the prosecutor's explanation. <u>Hernandez v. New York</u>, 500 U.S. 352, 360 (1991). A legitimate reason exercising the challenge is not required to make sense, be persuasive or even plausible; it need only be one that does not deny equal protection. <u>Purkett v. Elem</u>, 514 U.S. at 768-69. Throughout the process, the ultimate burden of persuasion regarding racial motivation rests with, and does not shift from, the defendant. <u>Id</u>. And, third, the trial court must

"assess the plausibility of that reason in light of all the evidence with a bearing on it." Miller-El v. Dretke, 545 U.S. 231, 252 (2005). In other words, the trial court must determine if the defendant has established purposeful discrimination. Batson, 476 U.S. at 98.

After full review of the transcript of the voir dire proceedings, and after having considered the totality of the circumstances with regard to the now-challenged strikes, the record fails to support Price's assertion that the state exercised its challenges in an intentionally discriminatory manner or intentionally systematically excluded African-Americans from the jury. Specifically, the state struck Gilbert and Somers on the ground that they had indicated that witness testimony alone was not sufficient for a finding of guilt and that physical evidence was also needed. See Trial Transcript at 95-6, 98-9, 164, 173. The state further based its strike as to Gilbert on the ground that he had earlier been a victim of a robbery and an eyewitness against a defendant that was set free and that it did not disturb him whatever that the jury had acquitted the defendant. Id. at 145-49, 164-65. Price's argument that defense counsel rehabilitated these potential jurors is refuted by the record, at least as to venireperson Somers. Id. at 120-38. Also, contrary to Price's assertions, there were no other venire persons who had also stated they would be unable to rely on circumstantial and testimonial evidence who were accepted by the state as jurors. Unlike venirepersons Gilbert and Somers, Lopez stated that she would be able to find that the state proved its case beyond a reasonable doubt without physical evidence. Id. at 103, 107-8. Similarly, the state's acceptance of Ambrose as a juror does not support a finding that the state's reasons for striking Gilbert and Somers was pretextual. While Ambrose did initially indicate that the state

8

would need physical evidence to prove its case, Ambrose later
indicated upon further questioning by the defense that she would be
able to apply the law to the evidence regardless of whether it was
physical evidence. Id. at 99-100, 124.

Price has failed to demonstrate that any facts were present
that would have challenged the plausibility of the prosecutor's
stated reasons. Based upon the totality of prospective jurors
Gilbert and Somers' responses along with their demeanor at the voir
dire proceeding, the prosecutor reasonably could have believed that
these prospective jurors were unable or unwilling to apply the law
to the evidence presented at trial. Price has, therefore, failed to
show by clear and convincing evidence that the trial court erred in
finding that Gilbert and/or Somers should be excused on a race-
neutral ground. See 28 U.S.C. §2254(e)(1). Even if the record can
be seen as somewhat ambiguous, that ambiguity is not construed in
favor of the petitioner in a federal habeas corpus proceeding. See
Venson v. Georgia, 74 F.3d 1140, 1146 (11 Cir. 1996)("The federal
court must assume in the face of an ambiguous trial record that the
state court judge complied with federal law, even if the applicable
legal standard is not mentioned in the record.").

Accordingly, there is no indication in the record that the
prosecution exercised the subject strikes in an unconstitutional
manner and it should not be presumed in this federal proceeding
that they were used in such a manner. See Hernandez v. New York,
500 U.S. at 374 (as noted by Justice O'Connor in her concurring
opinion: "Absent intentional discrimination violative of the Equal
Protection Clause, parties should be free to exercise their
peremptory strikes for any reason, or no reason at all. The
peremptory challenge is, 'as Blackstone says, an arbitrary and
capricious right; and it must be exercised with full freedom, or it

fails of its full purpose.' <u>Lewis v. United States</u>, 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011 (1892)(internal quotation marks omitted).")(O'Connor, J., concurring). <u>See also</u> <u>Melbourne v. State</u>, 679 So.2d at 764-65 (noting that peremptories are presumed to be exercised in a nondiscriminatory manner, and "[t]he right to an impartial jury guaranteed [by the constitution] is best safeguarded not by an arcane maze of reversible error traps, but by reason and common sense"); <u>Robinson v. State</u>, 832 So. 2d 944 (Fla. 3 DCA 2002)(holding that the State is entitled to choose its jurors even for capricious reasons as long as the reasons are not racially discriminatory).

The state's exercise of the peremptory challenges was therefore not in violation of <u>Batson</u>, and the trial court's striking of the jurors was proper. Consequently, the appellate court's affirmance of Price's conviction on direct appeal, where the court rejected the identical claim presented in this habeas corpus proceeding, is not in conflict with clearly established federal law or based on an unreasonable determination of the facts, and its result should not be disturbed.[5] 28 U.S.C. §2254(d)(1); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

Price alleges in his next five grounds for relief that he received ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards,

---

[5]The appellate court's <u>per curiam</u> affirmance without written opinion in the direct appeal proceeding is entitled to deference under the AEDPA for purposes of federal habeas corpus review. <u>Wright v. Secretary for Dept. of Corrections</u>,278 F.3d 1245 (11 Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003).

and that he suffered prejudice as a result.[6] <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Scrutiny of an attorney's performance is highly deferential. Reviewing courts will not second-guess strategic decisions; rather, the attorney's performance is evaluated in light of all the circumstances as they existed at the time of the conduct, and is presumed to have been adequate. <u>Strickland v. Washington</u>, 466 U.S. at 689-90. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. <u>Id</u>. at 690-91. Price presented the identical claims of ineffective assistance of trial counsel to the state courts in postconviction proceedings. For the reasons expressed immediately below, the trial court's determination that Price was not entitled to postconviction relief on his claims of ineffective assistance of counsel, which decision was affirmed on appeal, was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court

---

[6]When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." <u>Chandler v. United States</u>, 218 F.3d 1305 (11 Cir. 2000)(en banc), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." <u>Van Poyck v. Florida Dept. of Corrections</u>, 290 F.3d 1318, 1322 (11 Cir.), <u>cert</u>. <u>denied</u>, 537 U.S. 812 (2002), <u>quoting</u>, <u>Strickland v. Washington</u>, 466 U.S. 668, 690. Review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11 Cir. 1992). A claim of ineffective assistance is a mixed question of law and fact. <u>Strickland</u>, 466 U.S. at 698. The court "may decline to reach the performance prong of the ineffective assistance test if convinced that the prejudice prong cannot be satisfied." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11 Cir. 1995)(<u>citing</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984)). A claim of ineffective assistance is a mixed question of law and fact. <u>Strickland</u>, 466 U.S. at 698.

11

proceeding.[7] Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

Price claims in ground two that his successor lawyer improperly failed to conduct a proper investigation into the facts of the case and interview and call as a defense witness at trial Giovanni Herrera. Price states that Herrera would have testified at trial that he (Herrera) had observed Price running for his life from someone who was chasing Price in a pickup truck while armed with a gun.

Effective assistance of counsel embraces adequate pretrial investigation. <u>See</u> <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1262-63 (11 Cir. 1992) and cases cited therein. Accordingly, "[w]hen a lawyer fails to conduct a substantial investigation into any of his client's plausible lines of defense, the lawyer has failed to render effective assistance of counsel." <u>Id</u>. at 1263, <u>quoting</u>, <u>House v. Balkcom</u>, 725 F.2d 608, 615, 617-18 (11 Cir.), <u>cert</u>. <u>denied</u>, 469 U.S. 870 (1984). Although counsel has no absolute duty to investigate particular facts or a certain line of defense, a complete failure to investigate may constitute deficient performance of counsel in some circumstances. <u>See</u> <u>Crawford v. Head</u>, 311 F.3d 1288, 1297 (11 Cir. 2002). As to failing to present certain witnesses, "[c]omplaints of uncalled witnesses are not

_____

[7]The appellate court's decision affirming the denial of Price's Rule 3.850 motion without written opinion constitutes an "adjudication on the merits," and is thus entitled to deference under the AEDPA for purposes of subsequent federal habeas corpus review. <u>Wright v. Secretary for Dept. of Corrections</u>,278 F.3d 1245 (11 Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). Price is only entitled to relief if the state appellate court's rejection of his claims was directly contrary to, or was an unreasonable application of, clearly established federal law. <u>Id</u>. at 1253-56. <u>See also</u> <u>Van Poyck v. Florida Dept. of Corrections</u>, 290 F.3d 1318, 1325 (11 Cir. 2002). For the reasons stated herein, the appellate court's decision affirming the denial of Price's Rule 3.850 motion on the subject issues was not unreasonable, and he is therefore not entitled to relief in this federal proceeding.

favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5 Cir. 1978). Further, tactical decisions within the range of reasonable professional competence are not subject to collateral attack unless a decision was so "patently unreasonable that no competent attorney would have chosen it." <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11 Cir. 1983). <u>See also</u> <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11 Cir. 1995)("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision and it is one that [the courts] will seldom, if ever, second guess."); <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 (11 Cir. 2000)(<u>en</u> <u>banc</u>), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001) (holding that counsel cannot be deemed incompetent for performing in a particular way in a case as long as the approach taken "might be considered sound trial strategy")(<u>quoting</u> <u>Darden v. Wainwright</u>, 477 U.S. 168 (1986)).

It is evident from the record that Price's lawyer(s) had properly investigated the facts of the case. For example, pretrial discovery was conducted during which the deposition of eyewitness Roman was taken. <u>See</u> Trial Transcript at 234-35. Defense counsel also called as a witness at trial the crime scene technician who testified that no latent fingerprints were discovered from the truck. <u>Id</u>. at 259-66. As indicated above, defense counsel called Price as a witness in his own defense to testify in support of the defense that he was being chased by an unknown individual, causing him to almost collide with the victim in this case as she was exiting her truck to go into her place of employment. The fact that successor defense counsel relied on the records obtained and depositions taken by previous counsel does not fall outside the wide range of professional competence, and Price's failure to

13

demonstrate that further discovery would have helped the defense clearly bars a finding of prejudice under Strickland. Brownlee v. Haley, 306 F.3d 1043, 1060 (11 Cir. 2002), citing, Aldrich v. Wainwright, 777 F.2d 630, 636 (11 Cir. 1985)(stating that "[s]peculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.") Moreover, it is evident from review of the record as a whole that trial counsel did properly investigate the facts of the case and had investigated all possible defenses. Since Price has failed to establish how any additional investigation would have raised a "reasonable probability" that the outcome of the trial would have been different, he has not demonstrated that he received ineffective assistance of trial counsel, as alleged.

Other than Price's unsupported allegations, there is no competent evidence of record that trial counsel was not aware of Giovanni Herrera and that Herrera would have provided exculpatory testimony if called as a witness at trial.[8] In fact, the record indicates otherwise. The record reveals that Herrera was the victim of a robbery that occurred at a Wendy's Restaurant that took place shortly before the subject incident. Price was charged with the armed robbery of Herrera, see Amended Information (DE# 15; App. A at 4), but that charge was subsequently dismissed. See Trial Transcript at 7. Immediately before trial proceedings commenced, defense counsel renewed an earlier motion in limine made during the initial trial proceedings to preclude the state from discussing the previous robbery involving Herrera. Id. The trial court granted such motion with the provision that the jury knows that Price had

---

[8]It is noted that in this federal proceeding, as was true in the state postconviction proceedings, Price has not supported his claim with an affidavit from the prospective witness regarding his intended testimony or his availability as a witness at the time of the trial.

been running when he was first seen by the witnesses. Id. Defense counsel was clearly aware of the existence of Herrera and elected not to call Herrera as a witness. This decision was a reasonable strategic decision made for the benefit of Price. Rather than exculpate Price, Herrera's testimony would have served to further incriminate him in that any such testimony would have necessarily included references to the prior unrelated robbery.

It is further noted that immediately before Price was to testify as a witness, the trial court conducted the following colloquy:

> THE COURT:        All right. Now, were there any other witnesses or evidence that you wanted to have presented in your case that you spoke to [defense counsel] Mr. Della Fera about? I'm sorry?
>
> THE DEFENDANT:  No, not really.
>
> THE COURT:        When you say not really, was there anything else?
>
> THE DEFENDANT:  Not that I know of, no.

Id. at 296. The record reveals that Price, at the least, acquiesced to this strategy after consultation with counsel.

Finally, even if counsel's performance could in any way be deemed deficient for failing to call Herrera as a witness, Price suffered no prejudice as a result of the alleged deficiency. Price testified at trial that he was being chased by two men who pushed him to the ground and began wrestling with him. He completely denied holding a firearm, pointing a gun at the victim, and trying to take the victim's truck. He simply indicated he almost bumped into Paik. Thus, his defense was that he had not committed the

crime of carjacking. Herrera's testimony would not have served to benefit the defense and would have been, at the best, cumulative and, at the worst, inculpatory. The fact that the jury chose not to believe the defense presented, does not mean that counsel rendered constitutionally ineffective assistance of counsel, as alleged. Since Price has not shown that there was a reasonable probability that he would have been found not guilty of the subject crime had defense counsel called Herrera as a witness, he has failed to satisfy the second prong of <u>Strickland</u>.

Price alleges in ground three that his lawyer rendered ineffective assistance when he failed to inform him of the state's evidence, resulting in his inability to make an intelligent and voluntary decision whether to proceed to trial or instead accept the state's plea offer. This claim is meritless, as refuted by the record.

Before trial proceedings were to start, the prosecutor announced in open court that a plea offer had been extended to Price which included a waiver of the prison releasee reoffender status and a mandatory minimum sentence of twenty-five years in exchange for a guilty plea and that Price had elected to reject the plea. (Trial Transcript at 4). The trial court then asked defense counsel whether he had advised Price of the plea offer. <u>Id</u>. at 4. Counsel responded affirmatively, stating that the day before he had spoken with Price for approximately four hours about the plea offer and that he had advised Price to consider accepting the plea. <u>Id</u>. at 5. Counsel informed the court that when Price rejected the offer, he advised Price to think about it overnight. <u>Id</u>. That morning, Price again indicated to counsel that he had decided not to accept the state's offer. <u>Id</u>. To determine whether Price had in fact been informed about the state's plea offer, that Price was

16

satisfied with his discussion with defense counsel, and that Price
was intelligently and voluntarily rejecting the offer, the trial
court conducted a careful and meticulous colloquy as follows:

| | |
|---|---|
| THE COURT: | Your lawyer has informed the Court that he has advised you of the State's plea offer of a 25 year minimum mandatory sentence. |
| | Has your lawyer explained that to you? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | *And did you have a chance to fully discuss this matter with your lawyer as it relates to the strengths and weaknesses of the State's case?* |
| THE DEFENDANT: | *Yes, sir.* |
| THE COURT: | *And your possible defenses as well?* |
| THE DEFENDANT: | *Yes, sir.* |
| THE COURT: | Have you made a decision as to whether you wish to reject or accept the State's plea offer? |
| THE DEFENDANT: | Yes, I made a decision. |
| THE COURT: | What is that decision? |
| THE DEFENDANT: | To reject the State's offer? |
| THE COURT: | Is that your decision? |
| THE DEFENDANT: | That is my decision. |
| THE COURT: | Are you making that decision of your own free will? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Has your lawyer in any way forced you into that decision? |
| THE DEFENDANT: | No, sir. |

(emphasis added). Id. at 5-6.

17

Price's assertion here that his successor lawyer failed to specifically apprise him that the evidence would clearly demonstrate that he was in possession of a gun is self-serving and wholly conclusory not warranting relief.[9] See Tejada v. Dugger, 941 F.2d 1551, 1559 (11 Cir. 1991)(recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citation omitted)). Price also cannot show prejudice to support his claim in that he maintained his innocence throughout his trial and postconviction proceedings. See Diaz v. United State, 930 F.2d 832, 835 (11 Cir. 1991)(stating that appellant failed to show that he would have pleaded guilty, considering that he was aware of the plea offer and had never "expressed any desire to plead guilty"). Further, a petitioner's after-the-fact statement that he would have pleaded guilty if not for counsel's ineffective assistance, "without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea agreement." Id.

Price next alleges in ground four that he received ineffective assistance of trial counsel when his attorney failed to request a special jury instruction on his duty to retreat from harm. Price appears to contend that the jury should have been apprised that he had been running from a man who had been the victim of an earlier robbery and who believed that Price was one of the perpetrators of

---

[9]Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative value.  Ross v. Estelle, 694 F.2d 1008, 1011-12 (5 Cir. 1983). Moreover, bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See United States v. Ammirato, 670 F.2d 552 (5 Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5 Cir. 1979); King v. United States, 565 F.2d 356 (5 Cir. 1978); Clayton v. Estelle, 541 F.2d 486 (5 Cir. 1976).

that unrelated robbery. Petitioner cannot show that defense counsel's performance was deficient with regard to the jury instructions or that such performance prejudiced the outcome of his trial. First, it appears that Price is confused regarding the applicable defenses in this case. Price appears to argue that the instant case is about him defending himself from danger and that in some way the instant crime resulted from his acts of self-defense. Price is clearly mistaken. Here, the evidence admitted at trial demonstrated that Price pointed a gun at the victim and attempted to take her vehicle by force, an act which can in no way be considered self-defense of the instant crime or the earlier unrelated crime. Price was the carjacker in this case and was not defending himself from a carjacking. Any use of force under the circumstances here would not be justified. See Cash v. State, 875 So.2d 829, 830, 831-32 (Fla. 2 DCA 2004)(finding that self-defense jury instruction might be applicable in situation where defendant was charged with second-degree murder and shooting at, within, or into a vehicle and defense at trial was that the victim was trying to carjack defendant and that defendant shot victim in self-defense while he was climbing out of the driver's window trying to escape). Further, Price's references to duty to retreat is nonsensical. See generally Soberon v. State 545 So.2d 490 (Fla. 3 DCA 1989)(recognizing that a person under attack has a duty to "retreat to the wall" before taking a life, and that the person must have used all reasonable means in his power, consistent with his own safety, to avoid the danger and to avert the necessity of taking human life).[10] Thus, defense counsel's performance cannot be

---

[10]Florida law had an exception to the duty to retreat, called the "castle doctrine" which has been described as follows: "[W]hen one is violently assaulted in his own house *or immediately surrounding premises,* he is not obliged to retreat." See Hedges v. State, 172 So.2d 824, 827 (Fla. 1965)(emphasis added). It is noted that Florida law with regard to the duty to retreat has been materially altered by statutory amendments that became effective on October 1, 2005. See ch. 2005-27, §§ 1, 2, Laws of Fla. Current law now provides that

deficient for failing to seek a jury instruction which would not be applicable to the instant case.

Moreover, during the charge conference, where Price was present, the jury instructions were discussed. (Trial Transcript at 248-58). At that time, the trial court indicated that there were two possible lesser included offenses: carjacking without a firearm and attempt to commit carjacking. (Trial Transcript at 249). When asked by the court whether the defense wanted the jury to be instructed on the two applicable lesser included offenses, defense counsel responded in the negative, stating: "No, I'm not going to ask for the lesser attempted carjacking after having an opportunity to speak with my client." Id. at 250. No special instructions were requested. Id. at 248-58. Again, immediately before closing argument was to be made the trial court raised the issue of lesser included offenses and conducted the following colloquy with Price to ensure that he had voluntarily elected to waive his right to have the jury instructed on the two applicable lesser included offenses:

> THE COURT:       Mr. Price, you understand what it is to have
>                  a lesser included crime?
>
> THE DEFENDANT:   Yes, sir.
>
> THE COURT:       That means within the main charge there may
>                  be a lesser offense that a jury can consider

---

A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.

Section 766.013(3), Fla.Stat. Section 766.013(1)(a), Fla.Stat. also now includes a presumption that a defendant had a reasonable fear of great bodily harm sufficient to justify the use of deadly force if the person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, a dwelling, residence, or occupied vehicle. See also Jenkins v. State, 942 So.2d 910 (Fla. 2 DCA 2006).

as to whether you're guilty of that or not, and I've already mentioned in this case you're charged with armed carjacking, a lesser included offense would be carjacking. That means without a firearm. The second one is attempted carjacking.

You understand that if you wish to have a lesser included offense, you can request them? Do you understand that?

THE DEFENDANT:   Yes, sir.

THE COURT:   Did you speak to your lawyer about the request for any lesser included offenses?

THE DEFENDANT:   Yes, we spoke.

THE COURT:   All right. Do you wish to have any lesser included offenses?

THE DEFENDANT:   No, sir.

THE COURT:   Is that your decision?

THE DEFENDANT:   Yes, sir.

THE COURT:   Anyone forced you into that decision?

THE DEFENDANT:   No, sir.

Id. at 298-99. At no time did Price indicate that he wanted any instructions not included. Id.

Moreover, any special instruction, even if available, would have then required the presentation of evidence that Price had been chased by Herrera which would have opened the door to inquiry regarding the first robbery at a Wendy's Restaurant perpetrated by Price. As indicated above, Price was successful in obtaining a motion in limine to prevent any such prejudicial evidence about the initial robbery from being admitted. In fact, trial counsel advised the court: "Your Honor, we've also discussed with Mr. Price, just so the record is absolutely clear and I had instructed him if he chooses to take the stand that we are going to begin with the

21

chase, and we are going to make no reference back to the Wendy's at 33rd Street so that we do not open the door regarding those particular set of events." Id. at 253. The court then advised the prosecutor that no reference to the earlier robbery was to be made unless trial counsel asked a specific question about the Wendy's robbery. Id. Consequently, there could not be any prejudice to the outcome of Petitioner's case. Any such instruction would therefore have done more harm than good.

Price claims in ground five that he received ineffective assistance of trial counsel when his attorney failed to impeach state witness Roman with his inconsistent deposition testimony. Specifically, Price asserts that Roman erroneously testified at trial that he alone saw and determined that he needed to chase Price when in his earlier deposition he testified that someone else, Giovanni Herrera, had been chasing Price in a pick-up truck, and Herrera yelled at him (Roman) to follow Price. This claim is meritless.

The decision to cross-examine a witness and the manner in which cross-examination is conducted are tactical decisions "well within the discretion of a defense attorney." Fugate v. Head, 261 F.3d 1206, 1219 (11 Cir. 2001)(quoting Messer v. Kemp, 760 F.2d 1080, 1090 (11 Cir. 1985)). Trial counsel is not ineffective simply for failing to elicit other testimony from those that testified. Id. at 1220. Rather, in order to establish the prejudice prong of Strickland, a petitioner must show at least one "specific instance where cross-examination arguably could have affected the outcome of either the guilt or sentencing phase of the trial."[11] Id. at 1219

---

[11]The performance prong of an ineffective assistance claim need not be discussed when no prejudice has been established.  See Brown v. Head, 272 F.3d 1308, 1313 (11 Cir. 2001), cert. denied, 537 U.S. 978 (2002).

(*quoting* <u>Messer</u>, 760 F.2d at1090). First, the transcript refutes Price's claim. At trial, Roman did not testify that he alone struggled with Price. <u>See</u> Trial Transcript at 222, 227-28, 234. Roman testified that someone else joined in the chase and assisted in wrestling Price. <u>Id</u>. When Roman attempted to be more specific about the chase, the reason for the chase, and who else was chasing Price, defense counsel either moved for a mistrial or moved to strike the testimony based upon the above-mentioned motion in limine which limited any reference to a previous robbery involving the victim, Herrera. <u>See</u> Trial Transcript at 7, 9, 222-23, 226-27, 228. Thus, there was no inconsistency in Roman's testimony which subjected him to impeachment on this issue, <u>id</u>. at 225-228, and counsel properly did not pursue the matter based upon sound trial strategy to keep such information about the earlier incident from the jury, as discussed above.

Further, review of the cross-examination of witness Roman indicates that trial counsel vigorously and thoroughly challenged Romans's credibility as a witness. When defense counsel believed there was an inconsistency in Roman's trial testimony, counsel did attempt to impeach Roman with his earlier inconsistent deposition testimony. Specifically, trial counsel cross-examined Roman with his previous deposition testimony regarding whether the other man who had been wrestling with Price had also choked Price to the point where Price was salivating. <u>Id</u>. at 234-35. Defense counsel also attempted to challenge the believability and reliability of Roman's testimony by revealing to the jury that, at the time of the subject incident, Roman was taking various prescribed psychotropic medications to treat a mental health disorder which he referred to as "nerves." <u>Id</u>. at 230-32. Counsel further attacked Roman's

version of the events and attempted to convey to the jury that either Roman was not telling the truth about the incident based upon the circumstances of the case or Roman could not be believed in that a sane or rational bystander would not give chase and capture an armed man without fear as he claimed. Id. at 230-32. Given the entire cross-examination of Roman, Price has not shown a reasonable probability that the outcome would have been different had trial counsel cross-examined Roman as he now suggests. This is especially true in light of the fact that Price testified as a witness in his own behalf that he had been chased by two men who pushed him to the ground and began wrestling with him. Price denied holding a firearm, pointing a gun at the victim, or trying to take her truck. He testified that in fact he was the victim here and that he almost ran into Jennifer Paik as she was getting out of her pickup truck. Id. at 268-283. Thus, even if counsel's performance could in any way be deemed deficient, Price has failed to satisfy the prejudice-prong of Strickland.

Price claims in his final ground for relief that his lawyer improperly failed to file a motion for new trial on the basis of the following statement made by the prosecutor during closing argument: "You know that Mr. Price didn't bump into Jennifer Paik, and you know Mr. Roman wasn't just chasing after him for no reason." (Trial Transcript at 300). Price alleges that the statement is an improper reference to uncharged criminal activity and facts not in evidence. Defense counsel lodged an objection to the comment at trial, and the trial court overruled the objection and instructed the jury to rely on the recollection of the evidence. Id. at 300-01. Defense counsel, however, did not move for

24

a new trial on the basis of the challenged remark.[12]

An expression by the prosecutor of his or her own belief in the defendant's guilt is clearly improper. See <u>Darden v. Wainwright</u>, 699 F.2d 1031 (11 Cir. 1983); <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986)(quoting <u>Donnelly v. De Christoforo</u>, 416 U.S. 637 (1974)). However, in both federal and Florida courts, prosecutors may comment on the evidence and reasonable inferences drawn therefrom. Further, a petitioner is not deprived of due process where a prosecutor asserts during closing argument that a defense witness lied, including the defendant, where such statements were reasonable inferences drawn from the physical evidence and witness testimony. See <u>United States ex. rel. Williams v. Washington</u>, 913 F.Supp. 1156, 1163-1164 (N.D.Ill. 1995). <u>See also</u> <u>White v. Kapture</u> 2001 WL 902500, *11 (E.D.Mich. 2001)(holding that a state prosecutor's references to a defendant as a liar and to the defendant's testimony as lies does not violate a habeas petitioner's right to a fair trial where the evidence of guilt is overwhelming, the remarks are isolated, and the remarks do not mislead the jury).

---

[12]In Florida, pursuant to <u>Fla.R.Crim.P</u>. 3.600(b), if prejudice is established, the grounds for the granting of a new trial are as follow:

(1) The defendant was not present at any proceeding at which the defendant's presence is required by these rules.
(2) The jury received any evidence out of court, other than that resulting from an authorized view of the premises.
(3) The jurors, after retiring to deliberate upon the verdict, separated without leave of court.
(4) Any juror was guilty of misconduct.
(5) *The prosecuting attorney was guilty of misconduct.*
(6) The court erred in the decision of any matter of law arising during the course of the trial.
(7) The court erroneously instructed the jury on a matter of law or refused to give a proper instruction requested by the defendant.
(8) *For any other cause not due to the defendant's own fault, the defendant did not receive a fair and impartial trial.*

(emphasis added).

Review of the closing argument in its entirety indicates that the challenged comment was in direct response to the strategy employed by the defense, which was in large part to forcefully attack the version of events presented by the state witnesses, especially eyewitness Roman and the victim. In support of the defense, Price testified that he was in the subject neighborhood looking for work and for no apparent reason, two men started to chase him. <u>See</u> Trial Transcript at 279-80. Price attempted to portray himself as the only one who was telling the truth about what had occurred and was the true victim in this case. <u>Id</u>. at 283. While possibly inartfully stated, the prosecutor's remark was appropriate rebuttal to the defense presented and an appeal to the jury to apply its common sense when arriving at what truly occurred in this case.[13] Rather, than refer to uncharged crime(s), the prosecutor was arguing that Price's actions were not innocent in connection with instant case and he was struggling with the men in order not to be apprehended for committing the subject crime, armed carjacking. Defense counsel's performance cannot be deemed deficient for failing to file a motion for new trial on the basis of prosecutorial misconduct in that the motion would not have been successful. <u>See generally</u> <u>Ford v. State</u>, 2001 WL 1044912, *3 (Fla. 2001)(holding that a mistrial based on prosecutorial comments is

---

[13]For example, the prosecutor stated as follows in his closing argument:

Mr. Price wants you to believe that on this day he was merely jogging, walking, wondering in the neighborhood, that he didn't have a gun, that he bumped into Jennifer Paik and she was terrorized, and that a bunch of men he didn't know - - Mr. Roman being one of them - - tried to kill him, and pulled the gun on him and attacked him.

You have to use your common sense, ladies and gentlemen. You know exactly what happened in this case....I want you to be able to talk about the case. I want you to be able to review the evidence and discuss it with each other. We've proven out case beyond a reasonable doubt, and so long as you believe that, you will return the verdict of guilty which is the just verdict in this case.

(Trial Transcript at 304).

appropriate only where a statement is so prejudicial that it vitiates the entire trial). Counsel has no duty to raise issues which have little or no chance of success. See generally, Chandler v. Moore, 240 F.3d 907, 917 (11 Cir. 2001)(counsel is not ineffective for failing to raise a non-meritorious objection); Card v. Dugger, 911 F.2d 1494, 1520 (11 Cir. 1990)(holding that appellate counsel is not required to raise meritless issues).

Even if the subject comment was in any way improper in that it was a reference to a collateral crime, or could have been construed by the jury as a comment on what had occurred before the subject incident (i.e., Price was running after having committed an unrelated robbery),[14] Price's trial was not rendered fundamentally unfair as a result. See Donnelly v. DeChristoforo, 416 U.S. at 642-45. There is no indication whatever that the prosecutor made the comment in a deliberate attempt to distract the jury from the issue of Price's guilt or mislead the jurors as to issues of guilt or innocence. The challenged comment did not fundamentally taint the trial and contribute to the conviction. Further, it is important to note that any possible prejudice which might have resulted from the comment was cured by the trial court's instructions to the jury. The trial court clearly and correctly instructed the jury on several occasions that what the lawyers said was not evidence in the case and should not be considered as such, and that the case must be decided only upon the evidence presented at trial. See Trial Transcript at 77, 180, 299, 301, 321, 324. It is generally

---

[14]Federal courts recognize the principle that evidence of other crimes, wrongs, or acts is not admissible to prove bad character. Britton v. Rogers, 631 F.2d 572 (8 Cir.), cert. denied, 451 U.S. 939 (1981). The same principle is found in Florida regarding the admission of collateral crime evidence. See Fla.Stat. §90.404(2)(a)(commonly known as the "Williams Rule"); Buenano v. State, 527 So.2d 122, 124 (Fla. 1987); Williams v. State, 110 So.2d 654 (Fla. 1959). See also Vail v. State, 890 So.2d 373, 376 (Fla. 3 DCA 2004); Henry v. State 649 So.2d 1366, 1367-68 (Fla. 1994); Jackson v. State, 403 So.2d 1063, 1066 (Fla. 1981).

presumed that jurors follow their instructions. See, e.g., Richardson v. Marsh, 481 U.S. 200, 211 (1987). Moreover, under the totality of the circumstances, including the strength of the evidence of Price's guilt, as summarized above, it is apparent that the prosecutor's remark was at worst no more than harmless error. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946)(a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict). Because there is no indication that the prosecutor's actions contributed to the verdict in this case, Price is not entitled to relief on this claim. See Harris v. Moore, 1999 WL 223167, *4 (M.D.Fla. 1999).


In sum, it is clear from the record when viewed as a whole that the petitioner received vigorous and able representation more than adequate under the Sixth Amendment standard. See Strickland v. Washington, 466 U.S. 668 (1984). Price has failed to demonstrate that he was deprived of constitutionally effective assistance of counsel for any of the reasons alleged above. Id.

Finally, Petitioner's contention that he is entitled to an evidentiary hearing in this Court on his grounds of ineffective assistance of trial counsel, or any other ground, is meritless. Section 28 U.S.C. §2254(e)(2) provides that a court shall not conduct an evidentiary hearing unless a petitioner failed to develop a claim in state court, provided that the claim relies on a new rule of constitutional law or on "a factual predicate that could not have been previously discovered through the exercise of due diligence" and the facts would "establish by clear and convincing evidence" the petitioner's actual innocence. See

28

<u>Williams v. Taylor</u>, 529 U.S. 420, 433-37 (2000). Price has failed to satisfy the statutory requirements in that he has not demonstrated the existence of any factual disputes that warrant a federal evidentiary hearing.

Based upon the foregoing, it is recommended that this petition for habeas corpus relief be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 23rd day of January, 2008.

_____
UNITED STATES MAGISTRATE JUDGE


cc:  Darcuis Donard Price, <u>Pro Se</u>
     DC# 191621
     Mayo Correctional Institution
     8784 US Highway 27 West
     Mayo, FL 32066

     Olga L. Villa, AAG
     Department of Legal Affairs
     444 Brickell Avenue
     Suite 650
     Miami, FL 33131